IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SHURON SPENCER,                )
                               )
        Petitioner,            )
                               )
    v.                         )   Civ. No. 05-407-SLR
                               )
THOMAS CARROLL,                )
Warden, and CARL               )
C. DANBERG, Attorney           )
General of the State           )
of Delaware,                   )
                               )
        Respondents.           )

Shuron Spencer.  Pro se petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for respondents.

**MEMORANDUM OPINION**

Dated: September 19, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

Petitioner Shuron Spencer ("petitioner") is an inmate in custody at the Delaware Correctional Institution in Smyrna, Delaware. Before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I. 1) The State has filed its answer that habeas relief is not warranted. For the reasons that follow, petitioner's application will be denied.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The facts of petitioner's case, as adduced at trial and reported by the Delaware Supreme Court on direct appeal, are as follows:

> The charges against [petitioner] arose from a shooting that occurred at a gas station on March 7, 2003. The victim, Lamar Scott, was pumping gas when [petitioner] emerged from a car. [Petitioner] began arguing with Scott and then shot Scott in the right knee. When Scott turned and began to move away, [petitioner] then shot Scott in the right buttock. Four to six seconds elapsed between the two shots.
>
> [Petitioner] was later arrested and charged with two counts of assault, for each of the two times he shot Scott. [Petitioner] was also charged with two counts of [possession of a deadly weapon during the commission of a felony] ["PFDCF"], for the two assaults he committed. At trial, [petitioner] moved to dismiss one count of assault and one count of PFDCF, arguing that the two shots were part of one continuous criminal act and that charging [petitioner] with two separate assaults violated his constitutional prohibition against Double Jeopardy. [Petitioner] also argued that because he was properly chargeable with only one count of assault, he could only be charged with only one count of PCDCF.

1

> The Superior Court concluded that a criminal intent to shoot a victim could be formed in an instant, and that each time [petitioner] pulled the trigger he formed a separate intent to harm Scott. Therefore, the Court held, [petitioner] had committed two distinct felonies because he shot and injured Scott twice and that before each shot, [petitioner] had formed a separate criminal intent.

Spencer v. State, 868 A.2d 821 (Del. 2005).

A Delaware Superior Court jury convicted petitioner of two counts of second degree assault, two counts of PFDCF, and one count of possession of a deadly weapon by a person prohibited. The Delaware Superior Court sentenced petitioner to two years in prison for each assault conviction, three years of mandatory prison time for each of the two PFDCF convictions, and two years in prison, suspended after one year for decreasing levels of supervision, for the person prohibited conviction. (D.I. 11)

Petitioner appealed, arguing that the separation of his actions into two distinct counts of assault violated his constitutional right against Double Jeopardy. Spencer, 868 A.2d 821. The Delaware Supreme Court rejected that argument and affirmed petitioner's convictions and sentences. Id. at 825.

### III. GOVERNING LEGAL PRINCIPLES

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Absent exceptional

circumstances, a federal court cannot review a habeas petition unless the petitioner has exhausted all means of available relief for his claims under state law. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842-44 (1999); Picard v. Connor, 404 U.S. 270, 275 (1971). A petitioner satisfies the exhaustion requirement by invoking "one complete round of the State's established appellate review process," which involves fairly presenting the claim to the state's highest court, either on direct appeal or in a post-conviction proceeding. O'Sullivan v. Boerckel, 526 U.S. 838, 844-45 (1999); See Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997).

If the state's highest court adjudicated a federal habeas claim on the merits, then a federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A state court decision constitutes an adjudication on the merits for the purposes of § 2254(d) if the "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), rev'd on other grounds by Rompilla v. Beard, 545 U.S. 374 (2005). Pursuant to § 2254(d), federal habeas relief may only be granted when the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

3

the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000); <u>Appel v. Horn</u>, 250 F.3d 203, 210 (3d Cir. 2001).

AEDPA also requires a federal court to presume that a state court's implicit and explicit determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); <u>Campbell v. Vaughn</u>, 209 F.3d 280, 286 (3d Cir. 2000). A petitioner can only rebut this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner asserts one claim in his § 2254 application, namely, that his two second degree assault convictions violate the Double Jeopardy Clause because they constitutes multiple punishments for a continuing second degree assaultive offense. (D.I. 1 at 5) The Delaware Supreme Court denied the claim as meritless. Therefore, the court must review petitioner's claim under § 2254(d)(1) and determine if the Delaware Supreme Court's decision was contrary to, or an unreasonable application of,

4

Supreme Court precedent.

The Double Jeopardy Clause protects against multiple punishments for the same offense. U.S. const. amend. V; <u>North Carolina v. Pearce</u>, 395 U.S. 711, 717 (1969). There are two general categories of multiple punishment cases: (1) cases involving a single act or transaction that constitutes a violation of "two distinct statutory provisions"; and (2) cases involving multiple violations of the same statute. See <u>Rutledge v. United States</u>, 517 U.S. 292, 297, n.6 (1996); <u>Bell v. United States</u>, 349 U.S. 81, 83-84 (1955). In either multiple punishment category, however, the "Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." <u>Missouri v. Hunter</u>, 459 U.S. 359, 366 (1983); <u>Jones v. Thomas</u>, 491 U.S. 376, 381 (1989). <u>Garrett v. United States</u>, 471 U.S. 773, 778-79 (1985); <u>Bell</u>, 349 U.S. at 82.

Consequently, when a legislature's intent to impose multiple punishments is clearly expressed in the criminal statute, the pertinent double jeopardy inquiry is limited to ensuring that "the total punishment did not exceed that authorized by the legislature." <u>Jones</u>, 491 U.S. at 381. However, when the legislative intent is unclear, courts generally apply rules of statutory construction to determine if the legislature intended multiple punishments in the particular situation. See <u>Garrett</u>,

5

471 U.S. at 778-79. For example, when a sentencing court imposes multiple punishments for violating a single federal statute, and Congress' intent is not clear, the reviewing court must determine the "unit of prosecution" under the statute, or the precise act or conduct criminalized under the statute, as intended by Congress.[1] Bell, 349 U.S. 81, 83-84 (1955); Sanabria v. United States, 437 U.S. 54, 69-70 (1978); United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 221 (1952). Determining the allowable unit of prosecution depends, in part, on the "key element" of the offense. See Ebeling v. Morgan, 237 U.S. 625, 629 (1915); Bell, 349 U.S. 81.

Finally, although the United States Supreme Court has held that a federal court is bound to accept a state supreme court's construction of that state's statutes, the Court has not expressly addressed whether a certain level of inquiry is required before a federal court is bound by the state court's statutory construction. Missouri, 459 U.S. at 368; O'Brien v. Skinner, 414 U.S. 524, 531 (1974)("it is not [the function of the Supreme Court] to construe a state statute contrary to the construction given it by the highest state court."). The Court of Appeals for the Third Circuit has addressed this issue, and

---

[1] In contrast, when the issue is whether separate counts under two separate statutes constitute one offense, courts follow the test articulated in Blockburger v. U.S., 284 U.S. 299, 302-03 (1932).

6

has expressly rejected "the suggestion that the double jeopardy clause dictates the rules of construction which state courts must follow in their interpretation of state law." Gillespie v. Ryan, 837 F.2d 628, 631 n.2 (3d Cir. 1988). Consequently, a state court's failure to "frame its analysis strictly in terms of legislative intent" or to expressly determine the "unit of prosecution" is not dispositive of the double jeopardy issue. Id.; See also Tarrant v. Ponte, 751 F.2d 459, 463 (1st Cir. 1985)(noting that, "as a matter of comity, . . . federal courts will be slow to impute to a state court the lack of a principled basis for decision, i.e., disregard of the criminal statute that defines the offense.").

The second degree assault statute under which petitioner was prosecuted reads, in pertinent part, that "[a] person is guilty of assault in the second degree when (1) [t]he person recklessly or intentionally causes serious physical injury to another person." Del. Code Ann. tit. 11, § 612. In petitioner's case, the Delaware Supreme Court did not expressly analyze the General Assembly's intent to impose multiple punishments for continuous assaultive episodes that violate the second degree assault statute; rather, after reviewing prior Delaware caselaw involving the imposition of multiple punishments for various other crimes, the Delaware Supreme Court concluded that the "critical [double jeopardy] inquiry is whether the temporal and spatial separation

7

between the acts supports a factual finding that the defendant formed a separate intent to commit each criminal act." Spencer, 868 A.2d at 823. Yet, because several of the cases reviewed by the Delaware Supreme Court (or cases cited within the initial set of cases) recognized the importance of discerning the legislative intent in resolving double jeopardy questions,[2] the Delaware Supreme Court "clearly was construing [Delaware] law."[3] Accordingly, the court concludes that the state court's shorthand inquiry into legislative intent was not contrary to, or an unreasonable application of, the inquiry into legislative intent required by governing Supreme Court precedent.

Having determined that the Delaware Supreme Court analyzed the legislative intent behind the second degree assault statute, the court is bound to accept the Delaware Supreme Court's conclusion that multiple punishments may be imposed for a continuous second degree assaultive episode when the facts support a finding of separate and distinct intent to inflict each

---

[2]The Delaware Supreme Court reviewed the following cases: (1) Williams v. State, 796 A.2d 1281 (Del. 2002)(where defendant was charged with two counts of possession of cocaine with intent to deliver); (2) Feddiman v. State, 558 A.2d 278 (Del. 1989)(where defendant was charged with eight counts of unlawful sexual intercourse); (3) Washington v. State, 836 A.2d 485 (Del. 2003)(where defendant was charged with two counts of robbery); and (4) Whitfield v. State, 867 A.2d 168 (Del. 2004)(where defendant was charged with attempted robbery, reckless endangerment, and assault).

[3]Gillespie, 837 F.2d at 631 n.2.

injury within that episode. Nevertheless, because the Delaware Supreme Court formulated its inquiry as one of factual intent, the court must next determine if the Delaware Supreme Court's conclusion that petitioner formed "separate intents to harm Scott before inflicting each injury" was an unreasonable determination of the facts based on the evidence adduced at the trial. 28 U.S.C. § 2254(d)(2).

> Here, the Delaware Supreme Court opined that,
>
>> although the temporal and spatial separation between the first and second shot was small, that separation was sufficient to support a finding that [petitioner] had formed a separate intent to harm Scott between the two gun shots. Scott turned his back to [petitioner] after the first shot, as evidenced by both pictures . . . of the crime taking place and by the fact that Scott was shot in the buttocks. The evidence of record is sufficient for a rational trier of fact to conclude that the intent [petitioner] had formed to shoot Scott in the leg was distinct from the intent he formed thereafter to shoot Scott in the buttocks after Scott turned his back to run away from his assailant.

Spencer, 868 A.2d at 824. Viewing the totality of circumstances, and given petitioner's failure to provide clear and convincing evidence to the contrary, the court finds that the jury could reasonably conclude that petitioner formed separate intents to inflict two separate injuries. The two shots fired by petitioner were separated in time by several seconds, each shot inflicted a separate injury, and the victim moved the location of his body in the time interval between each shot. If there was sufficient time between the two shots for the victim to attempt to escape and actually change the location of his body, a jury could

9

reasonably conclude that there was sufficient time for petitioner to form a new and separate intent before firing the second shot. Accordingly, the court concludes that the Delaware Supreme Court's decision does not warrant federal habeas relief.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. <u>See</u> Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

For the reasons stated above, the court concludes that petitioner is not entitled to federal habeas relief. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

For the foregoing reasons, petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254 will be denied.

An appropriate order will be entered.